# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| SALVATORE LARCA, | ) | CASE NO. 4:13-cv-205 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on defendants' motion to dismiss and/or motion for summary judgment (Doc. No. 55), defendants' supplemental motion to dismiss and/or motion for summary judgment (Doc. No. 57), and plaintiff's motion for extension of time to file an opposition to defendants' initial motion to dismiss (Doc. No. 64).

## I.  Factual Background

Plaintiff Salvatore Larca ("plaintiff" or "Larca") was sentenced to sixty-three months' imprisonment on April 13, 2007. (Doc. No. 18 at 62; Doc. No. 35 at 155.) In June 2007, defendant United States of America transferred Larca to the Federal Correctional Institution located in Elkton, Ohio ("FCI Elkton"), where he remained until his transfer to North Carolina in spring 2009. (Doc. No. 18 at 62; Doc. No. 26 at 120.) In fall 2008, Larca's health deteriorated precipitously, resulting in three visits to defendant Salem Community Hospital ("Salem").

Before his first admission to Salem on December 1, 2008, plaintiff contracted the bacterium *Clostridium difficile* ("*C. difficile*") at FCI Elkton, experiencing the first symptoms in

November 2008. (Larca Dep., Doc. No. 55-2 at 356.) After Larca visited the prison sick call several times, a prison doctor performed an abdominal X-ray on December 1, 2008, after which he immediately ordered Larca to the hospital. (*Id*. at 356-57.) Doctors at Salem diagnosed Larca with *C. difficile* and prescribed a suite of oral and intravenous antibiotics, discharging Larca on December 15, 2008. (*Id*. at 359-60, 262.) Larca returned to Salem on January 29, 2009 for a blood transfusion. (*Id*. at 362.) On March 2, 2009, Larca received a colonoscopy at Salem, whereupon the doctors recommended a colectomy. (*Id*. at 365.)

The United States transferred Larca to the Federal Medical Center in Butner, North Carolina ("FMC Butner"), via the Low Security Correctional Institution in Butner ("LSCI Butner"), in spring 2009, and he received a colectomy in October 2009 at a North Carolina hospital. (*Id*. at 366; Doc. No. 18 at 62.) Complications ensued—candidiasis in Larca's esophagus, wound infection, and lung emphysema. (Larca Dep. at 367; Doc. No. 26 at 121.) Plaintiff was released from prison to a halfway house in New York in March 2010 and received a total colectomy in March 2011. (Larca Dep. at 368; Doc. No. 18 at 62; Doc. No. 26 at 121.)

On July 27, 2010, plaintiff submitted an administrative claim for damage, injury or death on DOJ Standard Form 95 for misdiagnosis and mistreatment of *C. difficile*. (Doc. No. 18 at 62.) Plaintiff's administrative claim was denied on February 7, 2011, and plaintiff filed the instant action. (*Id*. at 63; Doc. No. 35 at 156-57.)

## II. Procedural Background

Plaintiff initially filed his complaint on June 10, 2011, under the Federal Tort Claims Act ("FTCA"), in the United States District Court for the Southern District of New York, as well as an amended complaint on November 20, 2012. (Doc. Nos. 1, 34.) Plaintiff's amended complaint asserts the following causes of action: (1) that defendant United States of America was

2

"careless, negligent and/or committed medical and hospital malpractice[;]" (2) that defendants did not obtain his informed consent to his medical treatment; (3) that U.S. Public Health Service officers and employees were "careless, negligent and/or committed medical and hospital malpractice[;]" and (4) that Salem breached its duty of care to plaintiff. (*See* Doc. No. 34 at 284-93.)

On October 15, 2012, defendant United States of America filed a motion to transfer the case to this Court under 28 U.S.C. § 1404(a). (Doc. No. 17.)  The New York district court granted the motion on December 16, 2012, and the case was transferred on January 29, 2013. (Doc. Nos. 35, 36.)

On September 19, 2013, defendants filed a motion to dismiss and/or motion for summary judgment. (Doc. No. 55.) Defendants filed a supplemental motion to dismiss and/or motion for summary judgment on October 9, 2013. (Doc. No. 57.) Plaintiff neither responded to the motion nor requested more time to respond to the motion. In fact, plaintiff did nothing at all until February 25, 2014, more than five months after defendants filed the motion, when the Court conducted a telephonic status conference with counsel. (Minutes, Feb. 25, 2014.) During the status conference, plaintiff requested additional time to respond to defendants' motion to dismiss, and the Court permitted plaintiff to move for leave to file an untimely opposition to the motion to dismiss, attaching the proposed opposition, on or before March 3, 2014. (*Id*.) The Court further permitted defendants to file a motion to challenge plaintiff's Rule 26 expert disclosure on or before March 10, 2014. (*Id*.) If defendants filed such a motion, plaintiff was given leave to file a response on or before March 31, 2014. (*Id.*) The Court stayed proceedings as to all matters unrelated to defendants' motion to dismiss and the Rule 26 dispute.

These detailed guidelines and deadlines notwithstanding, plaintiff filed a single

3

motion with a supporting memorandum on March 3, 2014, addressing all the topics covered at the status conference: (1) plaintiff's opposition on the merits to defendant's motion to dismiss, (2) plaintiff's purported compliance with Fed. R. Civ. P. 26(a)(2), and (3) plaintiff's motion for extension of time to file an opposition brief. (Doc. Nos. 64, 65.) The same day (March 3, 2014), plaintiff also filed a "non-retained" expert witness disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(c). (Doc. No. 63.) The report identified Dr. Daniel D. Hunt, MD, plaintiff's treating physician and surgeon, who, it is represented, will testify regarding the facts and circumstances of the medical care provided by defendants. (*Id*. at 454.)

Defendants filed a response on March 10, 2014, addressing all the topics covered in plaintiff's motion. (Doc. No. 66.)

The Court shall address the issues in the following sequence. First, the Court shall determine whether plaintiff should be permitted to file an untimely opposition to defendants' motion to dismiss. Second, the Court shall determine whether defendants' motion to dismiss and/or motion for summary judgment ought to be granted. Third and finally, the Court shall address the Fed. R. Civ. P. 26(a)(2) expert disclosure issue.

### III. Plaintiff's Motion for Extension

The Court instructed plaintiff to show "good cause as to why he should be able to file an untimely opposition" to defendants' motion to dismiss. (Minutes, Feb. 25, 2014). In his motion, plaintiff asks the Court's indulgence in accepting his untimely opposition, stating that he cannot "find any notice of a briefing date for opposition to the motion[,]" and he has "no record of receipt of the motions." (Doc. No. 65 at 467.) Plaintiff avers that he relied in good faith on his understanding of the Court's Case Management Plan and Trial Order, which set the deadline for responding to dispositive motions for April 7, 2014. (*Id*. at 467-68 [citing, indirectly, Doc. No.

4

48 at 300].)

Defendants argue that plaintiff has not shown that his failure to file a timely opposition resulted from excusable neglect. (Doc. No. 66 at 475.) Had plaintiff's counsel properly and timely applied for admission to practice in the Northern District of Ohio and registered to participate in the Court's Case Management/Electronic Case Files ("CM/ECF") system, defendants argue, plaintiff would have received email notification of the motion to dismiss. (*Id.* at 478.)

Under Local Rule 7.1(d), motions in opposition to dispositive motions are due within thirty (30) days of service of the dispositive motion. Here, Larca's opposition was due on October 19, 2013. Larca filed nothing until prompted by the Court's February 25, 2014 telephonic status conference, filing on March 3, 2014 a motion for extension of time to oppose defendants' motion to dismiss.

Rule 6(b) of the Federal Rules of Civil Procedure contemplates two situations in which a court may extend the time for filing: (1) "with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires" or (2) "on motion made after the time has expired if the party failed to act because of excusable neglect." Evaluating excusable neglect involves balancing five factors: "(1) the danger of prejudice to the nonmoving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citation omitted).

Of the five factors, the Court finds that the second weighs most heavily in favor of denying the extension. The delay in filing plaintiff's opposition totaled nearly five months, a

massive stretch of time that has irretrievably thrown the litigation off track.

Under the third factor, plaintiff has offered two justifications for the delay: (1) his understanding of the Court's Case Management Plan and Trial Order and (2) lack of notice of the motion. The Court finds meritless plaintiff's argument that he has no record of receipt of the motion. The Court notified plaintiff's counsel on January 29, 2013, that counsel was not admitted to practice in the Northern District of Ohio. Despite the Court's instruction that plaintiff's counsel must file an application for admission to practice, a motion to be admitted pro hac vice, or a motion to withdraw as attorney, plaintiff's counsel took no action until February 27, 2014, over a year later. (*See* Doc. No. 62.) On February 28, 2014, plaintiff's counsel was admitted pro hac vice and received the Court's instruction that Local Rule 5.1(c) requires attorneys to register for the Court's CM/ECF system and to receive all documents electronically. (Order, Feb. 28, 2014.) Ignoring Court orders regarding attorney admission does not constitute excusable neglect.

Moreover, under the fourth factor, plaintiff controlled the delay. Had counsel properly applied for admission to practice and registered for CM/ECF—matters within his sole control—counsel presumably would have timely responded to the motion or timely sought an extension.

Plaintiff's counsel has acted without care and without regard for the Court's orders and the Local Rules. Under the fifth factor, the Court is unwilling to say that plaintiff's counsel has acted in good faith.

Under the first factor, however, defendants would not suffer prejudice from the Court accepting plaintiff's untimely opposition. Whether or not the Court considers plaintiff's motion and the arguments in it, defendants have not shown that they are entitled to a dismissal.

6

As shown below, under Supreme Court precedent, Rule 10(D)(2) cannot apply to this case, and plaintiff need not file an affidavit of merit to proceed in this litigation.

Though the gesture is purely symbolic, the Court shall not consider plaintiff's arguments regarding the motion to dismiss because they are untimely. To the extent that the arguments in plaintiff's motion address the Rule 26 expert disclosure issue, the Court shall revisit the motion *infra*.

The Court now turns to defendants' motion to dismiss.

## IV. Defendants' Motion to Dismiss

Defendants seek to dismiss plaintiff's complaint for failure to submit the affidavit of merit required by Ohio R. Civ. P. 10(D)(2). (Doc. No. 55.) Entitled "Affidavit of merit; medical liability claim[,]" the rule provides, in part:

> (a) Except as provided in division (D)(2)(b) of this rule, a complaint that contains a medical claim, dental claim, optometric claim, or chiropractic claim, as defined in section 2305.113 of the Revised Code, shall include one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Affidavits of merit shall be provided by an expert witness pursuant to Rules 601(D) and 702 of the Ohio Rules of Evidence. Affidavits of merit shall include all of the following:
>> (i) A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;
>> (ii) A statement that the affiant is familiar with the applicable standard of care;
>> (iii) The opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff.
> (b) The plaintiff may file a motion to extend the period of time to file an affidavit of merit. The motion shall be filed by the plaintiff with the complaint. For good cause shown and in accordance with division (c) of this rule, the court shall grant the plaintiff a reasonable period of time to file an affidavit of merit, not to exceed ninety days, except the time may be extended beyond ninety days if the court determines that a defendant or non-party has failed to cooperate with discovery or that other

7

circumstances warrant extension.

    (c)    In determining whether good cause exists to extend the period of time to file an affidavit of merit, the court shall consider the following:

        (i)    A description of any information necessary in order to obtain an affidavit of merit;

        (ii)    Whether the information is in the possession or control of a defendant or third party;

        (iii)    The scope and type of discovery necessary to obtain the information;

        (iv)    What efforts, if any, were taken to obtain the information;

        (v)    Any other facts or circumstances relevant to the ability of the plaintiff to obtain an affidavit of merit.

    (d)    An affidavit of merit is required to establish the adequacy of the complaint and shall not otherwise be admissible as evidence or used for purposes of impeachment. Any dismissal for the failure to comply with this rule shall operate as a failure otherwise than on the merits.

Ohio R. Civ. P. 10(D)(2). Because plaintiff did not attach an affidavit of merit to his complaint, and has not filed one since, defendants argue that the complaint must be dismissed.

While plaintiff offered arguments in opposition (Doc. No. 65), the Court, as stated above, does not consider them.

Defendants filed a brief in reply to plaintiff's opposition, which the Court shall address out of an abundance of caution. In their reply brief, defendants add a layer of complexity to the motion. They claim that plaintiff "must comply with Ohio *and* North Carolina law, which both require that a certification or affidavit of merit be filed before any medical malpractice case can be initiated." (Doc. No. 66 at 472 (emphasis added).)[1] This represents a change in defendants' position because they formerly asserted that "Ohio tort law will apply to the plaintiff's claims[.]" (Doc. No. 18 at 61.)

North Carolina's specialized pleading requirement provides:

---

[1] The Court need not address defendants' claim that Larca must comply with the laws of both states because defendants waived this claim by raising it in their reply brief only. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (citing *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 335 (6th Cir. 2007)).

(j) Medical malpractice.--Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:

    (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

    (2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

    (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. R. Civ. P. 9(j). The Court shall determine whether either state rule applies to this case.

### A. Applicable Law

As stated above, plaintiff initially filed this case in the Southern District of New York, which transferred the case to this Court under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, provided that depositions of Larca and his New York physicians would be conducted in New York. (Doc. No. 35 at 161.) Cases transferred under 28 U.S.C. § 1404(a) require the transferee court to "apply the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964). Therefore, this Court must apply the state law that would have been applied by the Southern District of New York, where this case was initially filed. *See, e.g., Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 153-54 (2d Cir. 2013) (after transfer under § 1404(a), New York district court must apply the rules of decision that California court would have applied).

No matter where this case originated, however, the applicable law would remain

the same. Plaintiff brings this case under the FTCA, 28 U.S.C. § 1346, which requires the presiding court to apply the whole law of the place where the acts of negligence occurred, including its choice-of-law rules. *Richards v. United States*, 369 U.S. 1, 11, 82 S. Ct. 585, 7 L. Ed. 2d 492 (1962). Had plaintiff's case remained in New York, the New York district court would have determined where the acts of negligence occurred and applied the law of that state. Had the case been filed in Ohio, this Court would have done the same.

Here, acts of negligence occurred in two states: Ohio and North Carolina. As to defendant United States of America, plaintiff's complaint makes clear that negligent acts occurred in both states: "One or more facilities of Defendant, at which acts alleged to have constituted negligence are alleged to have taken place, located in FCI ELKTON, Federal Correctional Institution, 8730 Scroggs Road, Elkton, OH 44432 and FMC BUTNER, Federal Medical Center, Old N. Carolina Hwy 75, Butner, NC 27509." (Amended Compl., Doc. No. 34 at ¶ 2.) As to defendant Salem, while Larca felt the effects of Salem's conduct in North Carolina and New York, any acts of negligence attributable to Salem occurred in Ohio.

When it created choice of law rules for FTCA claims in *Richards*, the Supreme Court did not address the proper choice of law when multiple negligent acts occur in multiple states. Like many courts faced with this issue, the Court finds the Third Circuit's approach, set forth in *Gould Elecs. Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000), persuasive. *See also Simon v. United States*, 341 F.3d 193, 195 (3d Cir. 2003). *Gould* sets forth a two-step FTCA choice of law analysis: (1) select between the states' choice of law rules and (2) apply the selected state's choice of law rules to determine which state's substantive tort law applies. 220 F.3d at 180.

Under the first step, the Third Circuit outlined five approaches to selecting a

10

state's choice of law. The first approach directs the court to "appl[y] the choice of law rules on an act-by-act basis, applying the relevant state's choice of law rules for each act or omission." *Id.* at 181 (citing *Kohn v. United States*, 591 F. Supp. 568, 572 (E.D.N.Y. 1984)). Here, Salem's liability and the United States' liability for acts performed by and at FCI Elkton and Salem would be adjudicated under Ohio choice of law rules, while the United States' liability for acts performed by and at FMC Butner would be adjudicated under North Carolina choice of law rules. This approach strikes the Court as unworkable, given that the acts complained of arose from a continuous course of medical treatment. *See Gould*, 220 F.3d at 182-83.

The second and third approaches appear in *Bowen v. United States*, 570 F.2d 1311 (7th Cir. 1978). In the first *Bowen* method, the court determines where the last act or omission that caused the injury occurred. In the second *Bowen* approach, the court inquires where the act or omission having the most significant causal effect occurred. *Id.* at 1318. Under the first *Bowen* approach, Salem's last act occurred in Ohio, while the federal defendant's last act occurred either in North Carolina at FMC Butner or at the New York halfway house, where the federal defendant released Larca from custody. Under the second *Bowen* approach, the acts with the most significant causal effect were likely the initial steps taken by both defendants to diagnose and treat plaintiff's *C. difficile* infection, all of which occurred in Ohio.

In the fourth approach, the court selects the state in which physical acts could have prevented the injury. *Gould*, 220 F.3d at 183 (citing *Ducey v. United States*, 713 F.2d 504, 509 n.2 (9th Cir. 1983)). This approach largely recommends applying Ohio choice of law because the initial treatment and diagnosis occurred in Ohio. Had these steps been more effective, plaintiff alleges, plaintiff's injuries might have been avoided. Plaintiff further alleges, however, that some physical acts performed during the North Carolina surgery could have

prevented plaintiff's post-surgical complications.

Finally, under the fifth approach, the Court determines where the "relevant" act or omission occurred. *Gould*, 220 F.3d at 183 (citing *Hitchcock v. United States*, 665 F.2d 354, 359 (D.C. Cir. 1981)).  The final approach recommends Ohio law for the same reasons as the second *Bowen* approach: defendants' initial diagnosis and treatment of plaintiff's *C. difficile*, the most "relevant" acts, occurred in Ohio.

On balance, the Court is convinced that Ohio choice of law rules ought to apply and would have been applied had the case remained in the Southern District of New York.

Choosing to apply Ohio or North Carolina choice of law principles is an academic endeavor, as both state's tort choice of law principles largely mirror each other. Ohio has adopted the Restatement approach to tort choice of law. *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St. 3d 339, 341-42, 474 N.E.2d 286 (1984). The Restatement calls for the "the local law of the state where the injury occurred," "unless, with respect to the particular issue, some other state has a more significant relationship[.]" Restatement (Second) of Conflict of Laws § 146. The Restatement provides five factors to determine the state with the most significant relationship to the lawsuit: "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation." *Morgan*, 15 Ohio St. 3d at 342. Meanwhile, North Carolina's tort conflict of law rules apply the laws of the "the state where the injury occurred[.]" *Mosqueda v. Mosqueda*, 721 S.E.2d 755, 759 (N.C. Ct. App. 2012).

While plaintiff was allegedly injured in both Ohio and North Carolina, his

12

complaint states that the initial injury occurred in Ohio and led to any subsequent injuries in other states. Between the two defendants, most, though not all, of the acts occurred in Ohio. Additionally, both Salem and FCI Elkton are located in Ohio and their relationship with Larca existed solely in Ohio. The actions occurring at FMC Butner in North Carolina arose out of and are dependent upon the actions taken by defendants in Ohio. The Court finds, therefore, that the initial and triggering injury alleged by plaintiff occurred in Ohio and that Ohio has the most significant relationship to the lawsuit and the parties.

Accordingly, using Ohio choice of law principles, the Southern District of New York would have applied Ohio substantive law had this case remained in that district. Now, the Court must determine whether Rule 10(D)(2) constitutes Ohio substantive law.

**B. Procedural v. Substantive Law**

Though the Court has federal question jurisdiction over this case, it must apply state substantive law, placing the Court in the same position as courts sitting in diversity and applying state substantive and federal procedural law as required by *Hanna v. Plumer*, 380 U.S. 460, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965). *See In re Zyprexa Prods. Liab. Litig.*, Nos. 04-MD-1596, 11-CV-75, 2011 WL 5563524, at *3 (E.D.N.Y. Nov. 15, 2011) (applying *Hanna* framework to FTCA claim arising under Ohio substantive law). Having determined that the New York court would have applied Ohio substantive law, the Court must determine whether it would have decided that Ohio R. Civ. P. 10(D)(2) was a substantive requirement and thus applied to the case.

**1.    The *Hanna* Inquiry**

The system of applying state substantive and federal procedural law "is governed by a statutory framework, and the way that it is administered varies depending upon whether

there is a federal rule addressed to the matter." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) (Stevens, J., concurring in part and concurring in the judgment) (citing *Hanna*, 380 U.S. at 469-72). "Where a Federal Rule of Civil Procedure provides a resolution of an issue, that rule must be applied by a federal court sitting in diversity to the exclusion of a conflicting state rule so long as the federal rule is authorized by the Rules Enabling Act and consistent with the Constitution." *Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000); *see also Retained Realty, Inc. v. McCabe*, 376 F. App'x 52, 55 (2d Cir. 2010) ("for issues encompassed by the Federal Rules of Civil Procedure: '[i]t is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law'") (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 n.7, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996)). The Rules Enabling Act gives the Supreme Court power to prescribe general rules of practice and procedure for the federal district courts, provided that "[s]uch rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

Only if the Federal Rule does not apply to the issue in question should the court determine whether the state rule ought to apply pursuant to the doctrine announced in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). *Hanna*, 380 U.S. at 470. Under the *Erie* doctrine, the court asks if it "significantly affect[s] the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court." *Hanna*, 380 U.S. at 466 (quoting *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945)). Above all, the court's inquiry "must be guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Gasperini*, 518 U.S. at 428 (quoting

14

*Hanna*, 380 U.S. at 468).

        **2.**       ***Shady Grove***

        In *Shady Grove*, the Supreme Court demonstrated how to conduct the *Hanna* inquiry. A majority of the Supreme Court concluded that a New York statute precluding class actions seeking penalties or statutory minimum damages directly conflicted with Rule 23 of the Federal Rules of Civil Procedure. 559 U.S. at 405 (majority opinion). Rule 23 provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if" the action fits within one of three defined types of class action. Fed. R. Civ. P. 23(b). The New York statute in question provided that "an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." N.Y. C.P.L.R. § 901. The Supreme Court concluded that both "undeniably answer the same question . . . : whether a class action may proceed for a given suit." *Shady Grove*, 559 U.S. at 401. Importantly, Rule 23, by its plain language, provided the necessary and sufficient elements to maintain a class action. *See id.* at 399-400 (Rule 23 "says that if the prescribed preconditions are satisfied '[a] class action *may be maintained*' . . . –not '*a class action may be permitted.*'") (emphasis in original). Once present in a federal case, these elements, without more, allowed maintenance of a class action. As Rule 23 completely answered whether any particular class action may proceed in federal court, the majority found that state rules or statutes adding, altering or amending class action requirements conflicted with Rule 23. Thereafter, the Supreme Court fractured.

        Writing for four justices, Justice Scalia placed minimal restrictions on applying the Federal Rules to the exclusion of conflicting state rules. He wrote, "Congress has undoubted power to supplant state law, and undoubted power to prescribe rules for the courts it has created, so long as those rules regulate matters 'rationally capable of classification' as procedure." *Shady*

*Grove*, 559 U.S. at 406 (citing *Hanna*, 480 U.S. at 472) (plurality opinion). Further, if a Rule "really regulat[es] procedure," i.e., "the manner and means by which the litigants' rights are enforced," the Rule passes muster under the Rules Enabling Act. *Id*. at 407 (citation and quotation marks omitted). Only if the Rule "alters the rules of decision by which [the] court will adjudicate [those] rights," would the plurality find a violation of the Rules Enabling Act. *Id*. (citation and quotation marks omitted).

In a concurring opinion, Justice Stevens finds the Rules Enabling Act a more demanding master. Under the Act, Federal Rules "shall not abridge, enlarge or modify any substantive right[,]" 28 U.S.C. § 2072(b), which Justice Stevens takes to mean that "federal rules cannot displace a State's definition of its own rights or remedies." *Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring in part and concurring in the judgment). "A federal rule, therefore, cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id*. at 423. Although a Federal Rule might fall within the broad scope of § 2072(a), a particular *application* of the Rule might nonetheless offend the Rules Enabling Act in the manner described above. *Id*. at 426-27.

Post-*Shady Grove* decisions have largely applied Justice Stevens' narrow holding as the controlling opinion in determining whether a Federal Rule may displace a conflicting state law. *See Philips v Philip Morris Co., Inc.*, 290 F.R.D. 476, 479-80 (N.D. Ohio 2013) (collecting cases); *Retained Realty, Inc.*, 376 F. App'x at 55, n.1 ("Justice Stevens's concurrence provides an exception for situations in which the rules would displace a state law that is procedural in the ordinary use of the term but [is] so intertwined with a state right or remedy that it functions to define the scope of the state-created right.") (citation and quotation marks omitted); *see also*

16

*Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (citations and quotation marks omitted).

### 3.    Federal Pleading Requirements

Here, the Court must determine if there is a Federal Rule to address the question currently before it—the sufficiency of Larca's complaint. Rule 8 of the Federal Rules of Civil Procedure governs pleadings in federal courts. The Supreme Court has stated that a plaintiff need only allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Together, *Twombly* and *Iqbal* "determine[] the sufficiency of a complaint" under Rule 8, which "governs the pleading standard 'in all civil actions and proceedings in the United States district courts[,]' . . . antitrust and discrimination suits alike." *Iqbal*, 556 U.S. at 684 (quoting Fed. R. Civ. P. 1). The lone exceptions are, of course, the heightened pleading requirements set forth in Rule 9 of the Federal Rules of Civil Procedure.

### 4.    Ohio Medical Malpractice Pleading Requirements

The state rule in question also governs the sufficiency of the complaint. *Fletcher v. Univ. Hosp. of Cleveland*, 120 Ohio St. 3d 167, 897 N.E.2d 147 (2008). In *Fletcher*, the Ohio Supreme Court explained that the rule "deter[s] the filing of frivolous malpractice claims" by requiring an affidavit to "establish the adequacy of the complaint." *Id*. at 170 (citing Ohio R. Civ. P. 10(D)(2)(c)). The court likened Rule 10(D)(2) to "heightened pleading burden[s]" in negligent

17

hiring claims, *Byrd v. Faber*, 57 Ohio St. 3d 56, 61, 565 N.E.2d 584 (1991), employer intentional tort claims, *Mitchell v. Lawson Milk Co.*, 40 Ohio St. 3d 190, 532 N.E.2d 753 (1988), and fraud or mistake claims, Ohio R. Civ. P. 9(B). *Id.* Indeed, "the very purpose of Civ. R. 10(D)(2) is to place a *heightened pleading requirement* on parties bringing medical claims." *Id.* (emphasis added). Importantly, the complaint itself must include the affidavit, unless the complaint contains a motion to extend the period of time to file the affidavit. Ohio R. Civ. P. 10(D)(2)(a)-(b).

### 5. Cases Applying the *Hanna* Inquiry to Rule 10(D)(2)

A majority of Ohio federal courts, including this Court, have found Rule 10(D)(2)'s affidavit of merit requirement to be substantive pursuant to the *Erie* doctrine and thus applicable in federal court. *See, e.g., Daniel v. United States*, 716 F. Supp. 2d 694, 698 (N.D. Ohio 2010); *Bush v. United States*, No. 1:13-cv-406, 2014 WL 661686, at *6 (S.D. Ohio Feb. 19, 2014); *Favor v. W.L. Fore Assocs., Inc.*, No. 2:13-cv-655, 2014 WL 533804, at *4 (S.D. Ohio Feb. 11, 2014); *Fonseca v. United States*, No. 1:13CV1710, 2013 WL 6797736, at *4 (N.D. Ohio Dec. 23, 2013); *Bierbauer v. Manenti*, No. 4:09CV2142, 2010 WL 4008835, at *10 (N.D. Ohio Oct. 12, 2010).

In *Daniel*, the major published opinion on the issue in this judicial district, the court found that "[d]isregarding the Ohio rule in this case would significantly affect the result of the litigation[,]" as, unlike state court plaintiffs, the federal plaintiff "would be permitted to proceed in the action without meeting this threshold requirement." *Daniel*, 716 F. Supp. 2d at 698. Because the affidavit requirement significantly affects the result of the litigation, the outcome-determinative standard articulated in *Hanna* demands that it must apply. In *Daniel*, upon which most subsequent decisions have relied, the court also noted that affidavit of merit requirements in other jurisdictions have been categorized as substantive law and applied in

FTCA cases. *Id.* (collecting cases). Indeed, the only New York court to consider Rule 10(D)(2) in this context followed *Daniel*, concluding that it applies in FTCA actions as substantive law. *In re Zyprexa Prods. Liab. Litig.*, 2011 WL 5563524, at *4.

Shortly after *Daniel*, however, the Supreme Court handed down *Shady Grove*. No case following *Daniel* has cited *Shady Grove* or followed its analytical framework. In contrast to the Supreme Court's process in *Shady Grove*, neither *Daniel* nor the decisions following it addressed the crucial pre-*Erie* threshold question—whether a Federal Rule answers the question in dispute such that a conflicting state law cannot apply.

Two district courts in this judicial district have answered this threshold question and found, at the very least, that Federal Rules of Civil Procedure 8 and 9 covered the issue in question, leaving no room for the conflicting state rule. *See Thompson v. United States*, No. 1:13-CV-00550, 2013 WL 3480347 (N.D. Ohio July 10, 2013); *Muncy v. Siefker*, No. 3:12cv2301, 2013 WL 1284233 (N.D. Ohio Mar. 26, 2013). Unique among the cases in this judicial district construing Rule 10(D)(2), both *Thompson* and *Muncy* rely on the Supreme Court's decision in *Shady Grove* to show that Rule 10(D)(2) collides with the applicable Federal Rules of Civil Procedure.

In *Thompson*, the court concluded that Rule 10(D)(2) consigned into oblivion Fed. R. Civ. P. 8(a)'s introductory clause—"a pleading 'that states a claim for relief' must contain: [three listed requirements.]" *Thompson*, 2013 WL 3480347, at *3 (quoting Fed. R. Civ. P. 8). Rules 8(a) and 9, which "lay out a comprehensive scheme" for general and heightened pleading requirements, together control federal pleading standards. *Id.* Additional state pleading requirements beyond Rules 8 and 9, according to the court in *Thompson*, fare no better than the state limitations on federal class actions rejected in *Shady Grove*. *Id.* at *4. The court in *Muncy*,

19

likewise, concluded that "[t]here is a direct conflict, in practical effect, between Fed. R. Civ. Pro. [sic] 8 and Ohio Civ. R. 10(D)(2) that prevents the application of the state rule in this case." 2013 WL 1284233, at *5. While the court in *Thompson* did not consider whether the applicable Federal Rules "[were] consonant with the Rules Enabling Act[,]" 2013 WL 3480347, at *4, the court in *Muncy* found that Rule 10(D)(2) "plays no substantive role in determining the merits of the claim[,]" so applying Rule 8 would not enlarge a substantive right under the Rules Enabling Act. 2013 WL 1284233, at *7-8.

### 6. Decisions from other courts

Other federal courts faced with similar pleading dilemmas provide mixed guidance. Some federal courts have found specialized pleading requirements like Rule 10(D)(2) to contravene Rule 8(a)'s pleading standard. *See, e.g.*, *LaRue v. Mortg. Elec. Registration Sys., Inc.*, No. 1:12-cv-68, 2012 WL 3886876, at *4 (W.D. Mich. Sept. 6, 2012) (when state law required heightened defamation pleading standards, plaintiff only required to satisfy Rule 8); *State Farm Fire & Cas. Co. v. Allied & Assocs.*, 860 F. Supp. 2d 432, 446 (E.D. Mich. 2012) (same); *Lawler v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 2838359, at *2 (W.D. Tex. July 16, 2010) ("there is no special pleading requirement in federal court for a defamation action"); *Alexander v. Se. Wholesale Corp.*, -- F. Supp. 2d --, 2013 WL 5673311, at *8 (E.D. Va. Oct. 17, 2013) (state rule requiring *ad damnum* clause in plaintiff's complaint inapplicable in federal court because it conflicts with Rule 8). Some courts have even found that affidavit of merit requirements for medical malpractice claims conflict with Rule 8 and have applied federal procedural law instead. *See, e.g.*, *Estate of C.A. v. Grier*, 752 F. Supp. 2d 763, 772 (S.D. Tex. 2010) (finding Texas certificate of merit requirement to be procedural and thus inapplicable); *Boone v. Knight*, 131 F.R.D. 609, 611 (S.D. Ga. 1990) (Georgia expert affidavit requirement

20

"mandate[d] the pleading of evidentiary material" in direct conflict with Rule 8).

On the other hand, several federal circuits and many federal district courts, including the cases from this judicial district cited above, have found affidavit of merit requirements to apply in federal proceedings. Many of these cases, however, involve affidavit requirements that are not pleadings and "need not be filed until well after the complaint." *See, e.g.*, *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 263 (3d Cir. 2011) (Pennsylvania rule required filing of certificate of merit with the complaint or "within sixty (60) days of the filing of the complaint") (citing Pa. R. Civ. P. No. 142.3); *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000) (noting that New Jersey affidavit of merit requirement "is not a pleading[]" and "is not filed until after the pleadings are closed"); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1541 (10th Cir. 1996) (applying Colorado rule requiring filing of certificate of review "within sixty days after the service of the complaint") (citing C.R.S.A. § 13-20-602(1)); *Stanley v. United States*, 321 F. Supp. 2d 805, 807 (N.D.W.V. 2004) (applying state statute requiring notice of claim thirty days *before* pleadings). *But see Mathison v. United States*, 44 F. App'x 27, 29 (8th Cir. 2002) (applying Minnesota law that required serving the affidavit with the summons and complaint unless affidavit could not be obtained before applicable statute of limitations) (citing M.S.A. § 145.682); *Luckett v. United States*, No. 08-CV-13775, 2009 WL 1856417 (E.D. Mich. June 29, 2009) (applying state statute requiring contemporaneous filing of affidavit and complaint); *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 856 (W.D. Mich. 2012) (same).

### 7.    Application

The Court agrees with the courts in *Thompson* and *Muncy* that Rule 10(D)(2) directly collides with the pleading requirements set forth in Rules 8 and 9 of the Federal Rules of

Civil Procedure. As it did for Rule 23 and class actions, the Supreme Court has quite clearly stated that complaints filed in federal district courts are judged by Rule 8 (or Rule 9) and *Twombly, Iqbal*, and their progeny. *Iqbal*, 556 U.S. at 684. Likewise, the Ohio Supreme Court has unequivocally stated that Rule 10(D)(2) requires the affidavit to be filed contemporaneously with the complaint, constitutes a heightened pleading requirement, and goes directly to the sufficiency of the complaint.[2] *Fletcher*, 120 Ohio St. 3d at 170. Rule 10(D)(2)'s requirements concretely increase the plaintiff's burden to properly plead a cause of action in federal court. As Federal Rules 8 and 9 answer the question before the Court—the sufficiency of plaintiff's complaint—Rule 10(D)(2) conflicts with these Rules by adding requirements.[3]

Upon finding that the Federal Rules cover the issue and the state rule conflicts, the court must then determine if the Federal Rules are consonant with the Rules Enabling Act and the Constitution. If yes, then the Federal Rules are applied. As stated above, the inquiry is typically governed by Justice Stevens' concurrence in *Shady Grove*: "A federal rule, therefore, cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring in part and concurring in the judgment).

Here, Rule 10(D)(2) does not define the state-created medical malpractice cause of action. The rule itself notes that the "affidavit of merit is required to establish the adequacy of

---

[2] "Certificate of merit statutes that require plaintiffs to file the certificate contemporaneously with the complaint are incompatible with the pleading scheme established by the Federal Rules." Benjamin Grossberg, Comment, *Uniformity, Federalism and Tort Reform: The* Erie *Implications of Medical Malpractice Certificate of Merit Statutes*, 159 U. PA. L. REV. 217, 243 (2010).
[3] While the court in *Thompson* ruled that Rule 10(D)(2) conflicted with Rules 8, 9, and 11, the Court takes no position on Rule 11.

the complaint and shall not otherwise be admissible as evidence or used for purposes of impeachment." Ohio R. Civ. P. 10(D)(2)(d). The affidavit relates, then, only to the complaint and not to the scope of medical malpractice rights and remedies. Affidavit or no, federal plaintiffs asserting Ohio medical malpractice claims have no harder or easier path than state court plaintiffs in establishing the elements of medical malpractice. Indeed, omission of the affidavit in state court results in dismissal without prejudice, "an adjudication otherwise than on the merits[.]" *Troyer v. Janis*, 132 Ohio St. 3d 229, 232, 971 N.E.2d 862 (2012). Using the federal pleading scheme established by Rules 8 and 9 in lieu of Rule 10(D)(2), the scope of the substantive medical malpractice claim remains the same. Thus, the Federal Rules do not exceed the authority of the Rules Enabling Act.

Neither party has argued, and the Court sees no reason to conclude, that the Federal Rules are beyond the limits of federal constitutional authority. *See Windy City Metal Fabricators & Supply Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008) ("There is, moreover, no basis for concluding that the regulation of pleading requirements in federal court is beyond the limits of federal constitutional authority.") (citing *Hanna*, 380 U.S. at 464).

For all the reasons set forth above, the Court finds that Rules 8 and 9 of the Federal Rules of Civil Procedure answer the pleading question currently before the Court and therefore apply to the exclusion of the conflicting state rule. The Court further finds that the Rules exceed neither federal constitutional authority nor the authority of the Rules Enabling Act. According to *Hanna* and its progeny, therefore, Rules 8 and 9 displace Rule 10(D)(2), and no

affidavit of merit is required.[4] Defendant's motion to dismiss for failure to attach the affidavit of merit is DENIED.[5]

### V.  Rule 26 Expert Disclosure

The parties have also offered arguments as to the adequacy of plaintiff's expert witness disclosure under Rule 26. In a supplemental motion to dismiss, defendants claim that plaintiff did not disclose its expert witnesses by the Court's October 1, 2013 deadline. (Doc. No. 57 at 434.) Because a malpractice claim cannot be maintained without expert testimony, defendants seek dismissal of the complaint as a matter of law. (*Id.*)

In plaintiff's untimely motion, which the Court considers for the Rule 26 issue only, plaintiff claims that he identified Dr. Hunt, a non-retained expert, in September 2013, in compliance with the Court's Case Management Plan and Trial Order. (Doc. No. 65 at 466.) Plaintiff further claims that he identified the facts and opinions to which Dr. Hunt will testify: "the injuries suffered because of delay in diagnosis and treatment," including "ulcerative colitis, protectomy, ileostomy and treatment due to defendant's malpractice and that plaintiff will require future surgery." (*Id.*) In response, Defendants claim that plaintiff did not disclose Dr. Hunt or any other expert until February 14, 2014, when he served defendants with an expert witness disclosure. (Doc. No. 66 at 478.)

The Court stated during the February 25 status conference that defendants should file a Rule 26 motion challenging the expert disclosure on or before March 10, 2014. Presumably

---

[4] The Court notes that plaintiff initially filed this case in June 2011. If defendants were correct that Rule 10(D)(2) applied, requiring an affidavit of merit to be filed contemporaneously with the complaint, defendants filed their motion to dismiss in September 2013, more than *two years* after they were aware or should have been aware of this basis for dismissal. Even if the Court had concluded that Rule 10(D)(2) applied in federal court proceedings, equity would have strongly counseled against granting defendants the relief sought.

[5] Defendants relied on no other grounds for their initial motion to dismiss. (Doc. No. 55.)

because plaintiff addressed the issue in his motion for extension, defendants did not file a separate motion challenging the disclosure. Accordingly, the Court DENIES WITHOUT PREJUDICE defendants' supplemental motion to dismiss, insofar as that motion relied on the plaintiff's failure to comply with Rule 26's expert disclosure provisions. Defendants may file another motion challenging the expert disclosure within 14 days of this Memorandum Opinion and Order. Plaintiff may file a response within 10 days of the defendants' motion, and defendants may reply within 7 days thereafter.

## VI. Conclusion

In accordance with the analysis set forth above:

(1) Plaintiff's motion for extension of time is DENIED. The Court shall not and does not accept plaintiff's motion in opposition to defendants' motion to dismiss.

(2) Defendants' motion to dismiss and/or motion for summary judgment is DENIED. Plaintiff is not required to file an affidavit of merit in this case.

(3) To the extent that defendants have made a motion to dismiss based on plaintiff's lack of Rule 26 expert disclosures, the motion is DENIED WITHOUT PREJUDICE. Defendants may refile in accordance with the schedule set forth above.


**IT IS SO ORDERED**.


Dated: July 28, 2014

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**